### CENTRAL R. CO. OF NEW JERSEY v. HIRSCH.

#### (Circuit Court of Appeals, Third Circuit. May 20, 1915.)

#### No. 1915.

CARRIERS ☞336—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE.

    A passenger, while standing on the steps of a vestibuled car in a moving train, to which position he was invited by the action of a baggageman in opening the vestibule doors under instructions from the conductor to let the passenger off at the next station, should the train be obliged to stop there, was knocked from the steps by the swinging shut of the vestibule door which the baggageman had negligently left unsecured. A rule of the company posted in the car prohibited passengers from going upon the platform when the car was moving, and a state statute exempted the company from liability for injury to a passenger "by reason of" a violation of such rule. *Held* that, while the passenger may have assumed the ordinary risk in violating the rule; he was not bound to anticipate the negligence of the employé which was the proximate cause of his injury, and was not barred of the right to recover for his injury by contributory negligence.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1357–1362; Dec. Dig. ☞336.]

In Error to the District Court of the United States for the District of New Jersey; Hunt, Judge.

Action at law by Solomon Hirsch against the Central Railroad Company of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

Edwin F. Smith, of New York City, for plaintiff in error.

Wilbur A. Heisley, of Newark, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiff recovered damages in the District Court for personal injuries sustained while he was a passenger on one of the defendant's trains. The other facts—either undisputed, or settled by the verdict—are as follows:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the afternoon of February 24, 1913, the plaintiff, who was a traveling salesman, went to the Lakewood station two or three minutes before 3:44. This was the schedule time of a regular train by which he intended to travel to Farmingdale, a town not far distant. A train was standing at the station, which he supposed to be the one he desired to take. He checked his trunk to Farmingdale, and testified that the baggage master assured him that the trunk would go by the train then standing before the station. He took a seat in the forward compartment of a combination smoking and baggage car, the compartment being next to the engine. The train was vestibuled, the doors of the vestibule being of the usual pattern—a trapdoor, which when closed forms part of the platform, and when open leans back against the body of the car; and an upright or perpendicular door, which when closed forms an outside wall of the vestibule, and when opened swings back against the trapdoor. This arrangement requires the perpendicular door to be closed before the trapdoor can be lowered. There were devices for holding the doors in place when the vestibule was open.

When the plaintiff was asked for his ticket and offered the conductor a mileage book, he learned for the first time that he was on a special train whose first regular stop was Elizabethport, 40 miles or more beyond where he wished to go. Thereupon he asked to have the train stopped at Farmingdale, but the conductor refused the request, informing him, however, that the engine would probably take on water at Red Bank, a station some distance beyond Farmingdale, and that he could get off there. The plaintiff acquiesced, and paid his fare to Red Bank. Soon afterwards the situation arose that has given rise to the present suit. The defendant's road from Lakewood to a point beyond Farmingdale is a single track, and at Farmingdale the train on which the plaintiff was riding was due to pass another train coming in the opposite direction. Only one of these trains would stop; if the other train arrived first, the special would go directly on; but if the special arrived first, it would be obliged to stop, until the other train should pass. With this contingency in mind, the conductor told the baggageman to let the plaintiff off at Farmingdale if the special should be compelled to stop. The plaintiff overheard the conversation imperfectly, supposing it to be a positive direction to let him off at Farmingdale; but as it happened, his misunderstanding was of no importance, for as the special approached Farmingdale both the conductor and the baggageman ascertained that the other train had not yet arrived, and that the special would have to stop. The conductor learned this fact by looking out of the sidedoor of the baggage compartment, and the baggageman looked out from the vestibule door, which he had opened for that purpose. Another reason for opening it was probably to save time, as it was part of his duty to descend and turn the switch after the train stopped. While these events were happening, the train was nearing the siding (which was beyond the Farmingdale station), and the plaintiff left his seat, carrying his bag and coat, passed through the baggage compartment, went out upon the platform, and descended the steps, awaiting an opportunity to alight. The train was still moving at a speed which the plaintiff described as "fast"—some of the wit-

nesses thought it was 15 or 20 miles an hour—when the accident happened. One of the doors—probably the perpendicular door—fell against his body and forced him off the lower step, so that he was obliged to loosen his hold and was thrown to the ground, where he was dragged under the train in some way, suffering the severe injuries complained of.

Just why the plaintiff took his place on the platform was the chief matter in dispute, but since the verdict we must take the facts to be that he was invited to that position of danger by the baggageman (who was merely the conductor's agent to let the plaintiff off), and that he had good reason to believe that he was so invited in order that he might alight without delay when the train came to a stop. The jury has also found that he was not negligent in accepting the invitation and in taking a position on the steps, and further that the injury was due solely to the negligence charged in the declaration, namely, the baggageman's failure to fasten back the doors securely. The company's negligence is not denied, and the only question that needs consideration now is whether the court should have given peremptory instructions against the plaintiff on the ground that he was guilty of contributory negligence. If the case should have gone to the jury on this point, the instructions were careful and adequate.

The case is near the border line, but we have not been convinced that the court was in error. We shall not discuss, and certainly do not intend to qualify, the cases that declare the platform or steps of a moving train to be a place of obvious danger, which a passenger must ordinarily avoid. If he voluntarily take such a risk, he must bear the consequences; but the verdict has settled that the present plaintiff did not go upon the platform voluntarily, but in response to the invitation by the baggageman given in the course of obeying the conductor's instructions. Now, under such circumstances, while it may be true that the plaintiff was still taking the risk of a known or obvious danger, we have not been persuaded that he took the additional risk of the company's negligence. Section 39 of the New Jersey act of 1903 (P. L. 1903, p. 666), upon which the company puts much reliance, is not decisive of this controversy. That section is as follows:

"In case any passenger on any railroad shall be injured *by reason of his going or remaining on the platform* of a car, or on any baggage, wood, or freight car, in violation of the printed regulations of the company posted up in a conspicuous place inside of its passenger cars on the train, such company shall not be liable for the injury: Provided said company at the time furnished seats inside its passenger cars sufficient for the proper accommodation of its passengers."

The company furnished the seats and posted the proper regulation:

"Passengers must not go or remain on the platform while the car is in motion, nor must they go at any time in any baggage or freight car."

And it may well be that, if the plaintiff had been injured merely by reason of what may be described as the ordinary and fairly to be expected incidents of a position on the platform of a moving car, it would be necessary to consider how far this statute applied to the special situation, namely, the invitation to assume that position. But he was not so

injured. The proximate cause of the injury was the direct interposition of the company's negligence, namely, the failure to secure the doors carefully, and this he was not bound to anticipate. As far as can be seen, he would not have been thrown from the train if this neglect had not been present. Against such want of care he was not obliged to guard, and it was not part of the risk he assumed.

In our opinion the case was properly submitted to the jury, and the judgment is therefore affirmed.